JOHANNA MAHONEY, as Administratrix, etc., of PATRICK MAHONEY, Deceased, Respondent, *v.* COASTWISE LUMBER AND SUPPLY COMPANY, Appellant.

First Department, December 13, 1918.

Negligence — action for death of longshoreman injured while ascending ladder from hatch — evidence — elements of hypothetical question — liability of contractor with steamship line for act of the latter's employee in using ladder constructed by employees of contractor.

In an action to recover for the death of a longshoreman employed by a steamship line, it appeared that the defendant had contracted with the steamship line to encase metal parts of the ship in wood; that as the decedent was ascending a temporary wooden ladder from the hatch, the top rung pulled out and he fell, sustaining injuries; that said ladder was constructed by defendant's employees for their own use, and there was no proof that defendant was under any duty to furnish a ladder for use by employees of the steamship line; that there was a permanent iron ladder, but the question whether it was so covered with wood that it could not be used was controverted; that the decedent after his injury was able to reach a doctor's office; that later he was found to be suffering from nephritis and was thereafter removed to a hospital where he died from Bright's disease.

*Held*, that a finding of defendant's negligence should be reversed as being in part without evidence to support it, and as to other parts as being against the weight of the evidence.

As it was assumed that the decedent had Bright's disease and that it could not have been brought on by the fall, and as there was absolutely no proof of any antecedent condition of nephritis, it was reversible error to allow such condition to be assumed as one of the elements in a hypothetical question addressed to the medical experts.

If the longshoremen chose to raise the wooden ladder and use it for exit from the hatch where they were working for their own employer, the defendant cannot be held liable for any accident arising from such use.

The act of an employee of the steamship line in adopting and using the ladder cannot be charged against the defendant.

APPEAL by the defendant, Coastwise Lumber and Supply Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 12th day of June, 1918, upon the verdict

of a jury for $4,000, and also from an order entered in said clerk's office on the 10th day of June, 1918, denying defendant's motion for a new trial made upon the minutes.

*James B. Henney,* for the appellant.

*Allan E. Brosmith,* for the respondent.

DOWLING, J.:

Patrick Mahoney was a longshoreman employed by the French Line on the steamship *Ladrome* for three days prior to October 31, 1916, on which date he was engaged at his work as one of a gang of men loading the cargo in the hold of the steamship at hatch No. 4. The vessel at this time was "down the bay," taking on a cargo of powder. In order to prevent friction while carrying high explosives, the metal parts of a ship are encased in wood, and this work defendant had contracted to do for the French Line, but as the sheathing had been done before, all that was being done at this time was to do "odd patching" where the previous cargo had broken away parts of the old sheathing. Much of this work had been done at the pier before the ship went "down the bay." In hatch No 4 there was a permanent iron ladder, riveted to the ship's decks at top and bottom. Whether at the time of the accident this ladder was completely encased in wood, or was only covered on three sides, and whether it was so sheathed that it could be used at all, are controverted questions of fact. In any event, there was a temporary wooden ladder made and used by defendant's employees in the course of their work, and which had been left by them in the hold of the ship. The testimony is conflicting as to its position when thus left. Three witnesses for defendant testify that the ladder was lying flat in the tunnel in the hold when defendant's employees finished with their work. As against this, one witness for plaintiff testifies that he had seen this ladder both upright and lying in the hold; that he had not seen it lying in the hold on the day of the accident, but he does not undertake to swear that he saw it standing in position on that day, nor what its position was when defendant's employees finished using it. At all events, it was, so the witness says, a rough affair consisting of boards nailed

together, and he saw it in all positions at different times. While six witnesses called by plaintiff testified that the iron ladder was completely inclosed and that the wooden ladder in question was in use by the longshoremen, it also appears that the ladder was constructed by defendant's employees for their own use, and there is no proof that defendant was under any duty to furnish a ladder for use by the employees of the French Line, did in fact furnish such a ladder, or was chargeable with notice of its use by other than its own workmen. The ladder in question was a temporary affair, put together roughly for convenience of defendant's workmen in doing the work of sheathing the interior of the vessel and, being portable, was left wherever they stopped operations. If the longshoremen chose to raise this ladder and use it for exit from the hatch where they were working for their own employer, the defendant cannot be held liable for any accident arising from such use. The act of any employee of the French Line in adopting and using the ladder cannot be charged against the defendant. In fact, Mahoney was the last to leave hatch No. 4 at the noon hour on October 31, 1916, and as he was ascending the ladder, on his way to his lunch, the top rung pulled out and he fell into the hold, landing on the tunnel, which is a box inclosing the propeller shaft. He sustained injuries to his left ankle and leg, but was able to reach the doctor's office, where a wet dressing was put on and he was sent home. The doctor attended him at his home seven times, after which he paid eight visits to the doctor's office. The physician was sent for to attend him at his home on December second, when he was found to be suffering from nephritis, and he was thereafter removed to a hospital, where he died from Bright's disease on December 8, 1916. The attending physician admitted that he made no claim that the fall in question had caused Bright's disease in decedent; he contends that the fall " shook up his system and produced a shock which resulted in the lighting up of the latent disease from which he might not have died in many, many years." The hypothetical question addressed to the medical experts assumed that the nephritis existed in the patient without the patient's knowledge, or the knowledge of his physician, up to November 28, 1916. It was assumed that Mahoney then had

Bright's disease, as concededly the fall could not have brought it on. Plaintiff's medical witnesses both admit that. This being so, and there being absolutely no proof of any antecedent condition of nephritis, it was error to allow such condition to be assumed as one of the elements in the hypothetical question, and a very important one as well. Objections and exceptions were duly taken, and the error is one which alone would require the reversal of this judgment, even if we were not convinced that the evidence is insufficient to sustain the verdict.

The judgment and order appealed from will be reversed and a new trial ordered, with costs to appellant to abide the event. The finding of defendant's negligence is reversed as being in part without evidence to support it and, as to other parts, as being against the weight of the evidence.

CLARKE, P. J., LAUGHLIN, PAGE and MERRELL, JJ., concurred.

Judgment and order reversed and new trial ordered, with costs to appellant to abide event.